2009 Ark. App. 335

**Martha TAGGART, Appellant,**

v.

**MID AMERICA PACKAGING and Continental Casualty Company, Appellees.**

**No. CA 08–1303.**

Court of Appeals of Arkansas.

April 29, 2009.

Kenneth E. Buckner, Pine Bluff, for appellant.

Laser Law Firm, P.A., by: Frank B. Newell, Little Rock, for appellee.

M. MICHAEL KINARD, Judge.

In this workers' compensation case, Martha Taggart appeals from the Commission's decision awarding her wage-loss

benefits in the amount of twenty percent. She raises two points on appeal: (1) The amount of wage-loss benefits awarded by the Commission is insufficient; (2) The Commission erred in reversing its original order awarding her attorney fees as the prevailing party on appeal. Because we find merit in appellant's wage-loss argument, we reverse and remand the case for proceedings consistent with this opinion. We affirm on appellant's second point.

Appellant Martha Taggart began working for the employer, which is now known as Delta Natural Kraft, in 1977 and was terminated in 2005. She held various positions with the employer over the years. On December 31, 2003, she was working as a senior boiler operator when she sustained injuries to her back and right knee as the result of tripping and falling over a drain cover. Appellant continued to work until May 2, 2004. Working as a boiler operator required, among other things, walking, climbing ladders and stairs, and occasionally shoveling, climbing on top of rail cars, and crawling inside of boilers.

Appellant saw several different doctors for the treatment of her injuries, and she was unable to obtain a release allowing her to return to work without restrictions. In a letter from her employer dated August 1, 2005, appellant's employment was terminated because she had been on medical leave for over a year and the company did not have a job available within her physical limitations. In April 2005, appellant received a two-percent impairment rating for the lower right extremity[1] from Dr. Mulhollan. In August 2005, Dr. Moore as-signed appellant a rating of seven-percent permanent partial impairment to the body as a whole for her lumbar spine injury, which he diagnosed as a lumbar HNP L3/4. Appellees accepted these impairment ratings, and appellant was paid some temporary total disability and permanent partial disability benefits.

At the time of appellant's injury, she was earning $24.72 per hour and working a significant amount of overtime. Company records reflect that from June 6, 2003, through December 26, 2003, she earned $37,931.70. For the period from January 2, 2004, through June 11, 2004, she earned $29,789.37, for a total of $67,721.07 for the period from June 6, 2003, through June 11, 2004. At the time of the hearing before the administrative law judge, appellant was studying for her associate's degree and earning $5.15 per hour teaching children to read at a public elementary school. She worked twenty hours per week. She testified that she had applied for jobs with the Arkansas Department of Human Services and with Wal–Mart, without success. Her plan was to obtain a bachelor's degree from the University of Arkansas at Pine Bluff and ultimately to obtain a master's degree in social work. She testified that, according to her research, she could expect to make from $28,000 to $35,000 per year as a social worker. Additionally, appellant's disability insurer[2] provided a list of sedentary occupations that she would be capable of performing. The annual salaries for these jobs ranged from approximately $32,590 to $34,620.

---

1. As a scheduled injury, appellant's knee injury does not give rise to wage-loss disability because it was not found to be permanently and totally disabling. *See* Ark.Code Ann. § 11–9–521 (Repl.2002); *Taylor v. Pfeiffer Plumbing & Heating Co.*, 8 Ark.App. 144, 648 S.W.2d 526 (1983).

2. Appellant's disability insurer, Jefferson Pilot Financial, paid her long-term disability from October 2004 through October 2006, when it determined that she did not meet the definition of "totally disabled" beyond her "own occupation period." This was a policy that appellant purchased and paid for herself.

Appellant had a functional capacity evaluation (FCE) on January 27, 2005. The report stated that appellant gave an unreliable effort, with her pain rating not correlating with her outward indicators of pain and her self-perceived abilities not correlating with her actual abilities. Overall, she demonstrated the ability to work at least at the "light" work category over the course of an eight-hour day. Appellant underwent a second FCE on June 20, 2005. The results again demonstrated an unreliable effort on appellant's part, but the ability to perform work at least at the "light" category.

The issues litigated before the administrative law judge (ALJ) were appellant's entitlement to additional temporary total disability benefits from April 25, 2005, through July 25, 2005, and appellant's entitlement to wage-loss benefits. In an opinion filed August 8, 2007, the ALJ found that appellant was entitled to twenty-percent wage loss disability benefits as a result of her compensable low back injury over and above her physical permanent impairment. In explaining this finding, the ALJ wrote:

> The claimant is only age 54 and has taken a number of college-level studies. She has completed 24 or more hours toward her degree in Social Work and intends to pursue a Master's Degree. While her work history primarily involves industrial work, the preponderance of the evidence demonstrates that the claimant has reached maximum medical improvement and is capable of performing at least light duty work and should be able to secure steady employment. However, the evidence demonstrates that she will not be able to return to her prior work as a boiler operator or similar work due to the limitations and restrictions that have been placed on her due to her back injury by her treating physician. While the

claimant is currently attending a full schedule of classes and working a part-time job, the evidence demonstrates that she will have difficulty in replacing her wages at the level before her injury.

In an opinion filed August 27, 2008, the Full Commission affirmed and adopted the ALJ's decision, with one Commissioner dissenting in part. When the Commission adopts the conclusions of the ALJ, as it is authorized to do, this court considers both the decision of the Commission and the decision of the ALJ. *See Death & Perm. Total Disability Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003). Under our substantial-evidence standard of review, we must affirm if fair-minded persons with the same facts before them could have reached the Commission's conclusion. *Ellis v. J.D. & Billy Hines Trucking, Inc.*, 104 Ark.App. 118, 289 S.W.3d 497 (2008). For her first point on appeal, appellant argues that the award of twenty-percent wage loss is not supported by substantial evidence and that the award should have been higher. We agree.

The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Emerson Elec. v. Gaston*, 75 Ark.App. 232, 58 S.W.3d 848 (2001). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Eckhardt v. Willis Shaw Exp., Inc.*, 62 Ark.App. 224, 970 S.W.2d 316 (1998). Objective and measurable physical or mental findings, which are necessary to support a determination of "physical impairment" or anatomical disability, are not necessary to support a determination of

wage-loss disability. *Arkansas Methodist Hosp. v. Adams,* 43 Ark.App. 1, 858 S.W.2d 125 (1993). To be entitled to any wage-loss disability benefit in excess of permanent-physical impairment, a claimant must first prove, by a preponderance of the evidence, that he or she sustained permanent-physical impairment as a result of a compensable injury. *Wal–Mart Stores, Inc. v. Connell,* 340 Ark. 475, 10 S.W.3d 882 (2000). Other matters to be considered are motivation, post-injury income, credibility, demeanor, and a multitude of other factors. *Glass v. Edens,* 233 Ark. 786, 346 S.W.2d 685 (1961); *Curry v. Franklin Electric,* 32 Ark.App. 168, 798 S.W.2d 130 (1990); *City of Fayetteville v. Guess,* 10 Ark.App. 313, 663 S.W.2d 946 (1984). The Commission may use its own superior knowledge of industrial demands, limitations, and requirements in conjunction with the evidence to determine wage-loss disability. *Oller v. Champion Parts Rebuilders Inc.,* 5 Ark.App. 307, 635 S.W.2d 276 (1982).

In this case, the ALJ appears to have considered many—but not all—of the relevant factors. In considering wage loss, the ALJ referenced appellant's age, education, current job, future career plans, motivation to return to full-time employment, and her post-injury income. Significantly, appellant's pre-injury income was not addressed beyond a general finding that appellant "will have difficulty in replacing her wages at the level before her injury." The amount of appellant's pre-injury wages was not contested. In the "Factual Background" section the ALJ states that at the time of her work-related injury, appellant was making $67,721.07 during the period from June 6, 2003, to June 11, 2004. It appears that the ALJ (and thus, the Commission) failed to properly consider these pre-injury earnings when determining the amount of appellant's wage-loss disability. The evidence in the record clearly shows that the *most* appellant would be able to make as a social worker or in one of the sedentary jobs found by the disability insurer was $35,000 per year, an amount significantly less than appellant's pre-injury earnings. While we acknowledge that there is no formula for determining wage loss, this record simply does not support a finding that appellant's wage-loss disability was no more than twenty percent. We hold that substantial evidence does not support an award of only twenty-percent wage-loss disability. Accordingly, we reverse and remand this case for further proceedings consistent with this opinion, taking into consideration appellant's wages during the period from June 6, 2003, to June 11, 2004.

As her second point on appeal, appellant argues that "the Commission's decision to take away claimant's attorney's fee for being 'successful' on appeal should be reversed." In its order filed August 27, 2008, the Full Commission not only affirmed and adopted the ALJ's decision in this case, it also awarded appellant's attorney an additional attorney's fee in the amount of $500 in accordance with Ark. Code Ann. § 11–9–715(b) (Repl.2002), for prevailing in the appeal. Appellees filed a petition for reconsideration of the attorney's fee award, alleging that the award was not merited because appellant did not prevail on appeal. In an opinion filed October 3, 2008, the Commission ordered that appellant's attorney should not receive the $500 previously awarded.

Arkansas Code Annotated section 11–9–715 (Repl.2002) provides, in pertinent part:

(b)(1) If the claimant prevails on appeal, the attorney for the claimant shall be entitled to an additional fee at the full commission and appellate court levels in addition to the fees provided in subdivision (a)(1) of this section.

Accordingly, the issue before this court is whether the Commission erred when it held that appellant (the claimant) did not prevail on appeal to the Full Commission and thus should not be awarded attorney fees. In this case, it was appellant who appealed to the Full Commission, which affirmed and adopted the opinion of the ALJ. Appellees (the respondents) did not cross-appeal any issue. Because we believe substantial evidence |₈supports the Commission's finding that appellant did not prevail on appeal to the Full Commission, we affirm on this point.

Reversed and remanded in part; affirmed in part.

ROBBINS and BAKER, JJ., agree.